IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | |
|---|---|
| RONALD MCLANE, individually and on behalf of other similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> THE BANK OF NEW YORK MELLON, <br><br> Defendant | ) <br> ) <br> ) Case No. 20-cv-2554 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

1. Plaintiff Ronald McLane ("Plaintiff" or "Mr. McLane") brings this action individually and on behalf of all others similarly situated against Defendant The Bank of New York Mellon Corporation ("Defendant" or "BNY Mellon"). On behalf of himself and the class and subclass he seeks to represent, Plaintiff alleges as follows:

## NATURE OF THE ACTION

2. This is a class action on behalf of individuals and entities seeking redress for BNY Mellon's fraudulent and deceptive practices involving the manner in which BNY Mellon purchases and then seeks reimbursement for hazard insurance involving homes and residences that are the subject of foreclosure proceedings, and which are ultimately "redeemed" by the homeowners or their assignees.

3. Through a deceptive pattern and practice going back years, BNY Mellon has charged individuals who redeem their homes after foreclosure sales for a full year of hazard insurance, even though just a small fraction of the insurance is typically used, and even though insurance companies will typically reimburse a purchaser for unused insurance. BNY Mellon is unjustly enriching itself and misleading persons who are at their most financially vulnerable—

1

homeowners who just lost their homes in foreclosure proceedings and are trying to struggle back and recover their homes.

## THE FORECLOSURE REDEMPTION PROCESS AND BNY MELLON'S FRAUDULENT PRACTICES IN CONNECTION WITH THAT PROCESS

4. In Kansas (and in a number of other states), homeowners who are foreclosed upon and lose their residences at foreclosure sales have the statutory right (in Kansas under K.S.A. § 60-2414) to "redeem" their properties—in effect buy back the properties from the purchasers (usually the lending banks) within a specified period of time.

5. Redemptions in Kansas occur within either three months of the foreclosure sale, or 12 months after the sale, depending on the percentage of the original loan balance that remains outstanding. The redemption period is three months if the borrower has paid less than one-third of the original mortgage balance. If more than one-third has been paid, the period is 12 months. *See* K.S.A. § 60-2414(m).

6. To redeem their property, homeowners must pay a sum equal to the sales price the property brought at the foreclosure sale plus certain costs incurred "[d]uring the period allowed for redemption" by the purchaser, including "taxes on the lands sold, insurance premiums on the improvements thereon, [and] other sums necessary to prevent waste." K.S.A. § 60-2414(d).

7. As noted, one such reimbursable expense is hazard insurance. When BNY Mellon as a foreclosing bank is the successful bidder at a foreclosure sale, it sometimes purchases hazard insurance to protect the property following the sale. BNY Mellon typically buys coverage for a full year, even though insurance can be purchased for shorter periods of time (such as one month).

8. Prior to a redemption taking place, outside counsel for BNY Mellon prepares a redemption payoff statement. In redemptions involving the purchase of hazard insurance by BNY Mellon, counsel has the opportunity at that point to prorate the insurance amount. However, despite

the fact virtually all expenses in typical real estate closings (including redemption closings) are prorated, BNY Mellon and its counsel willfully and intentionally decide as part of their wrongful scheme to not prorate hazard insurance. Similarly, BNY Mellon and its counsel do not affirmatively disclose that the redemption payoff amount reflects the purchase of insurance for a full year.

9. Therefore, in redemptions in which BNY Mellon has purchased a full year of insurance, the redeeming homeowner is required to pay that entire cost as part of the redemption.

10. Following those redemptions, however, the insurance companies most likely reimburse BNY Mellon for the portion of the insurance that was not used, as is the custom for ordinary home insurance that is purchased but goes unused when the property changes ownership during the insurable period. For redemptions that occur within the three-month period permitted for, approximately 75% (or more) of the purchased insurance is not used. However, BNY Mellon does not return the reimbursed funds to the redeeming homeowners (or their assignees). Rather, it keeps the funds as an undeserved windfall even though the proceeds are unearned and rightfully belong to the homeowners.

11. The amounts at issue are not *de minimis*. While the cost of a full year of hazard insurance varies depending on property value and other factors, amounts can range from just under $1,000 to many thousands of dollars.

12. Plaintiff asserts putative class action claims on behalf of himself and all members of the putative class and subclass defined below. Plaintiff seeks damages, restitution, and injunctive relief.

3

## PARTIES

13. Plaintiff Ronald McLane is a citizen of Kansas who resides in Overland Park, Kansas, and is over the age of 18.

14. Defendant BNY Mellon, N.A. is a Delaware Corporation with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed classes exceed $5 million, exclusive of interest and costs, and each have more than 100 putative class members. Plaintiffs, as well as most members of the proposed Nationwide Class and Kansas Subclass, are citizens of states different than BNY Mellon.

16. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district or, alternatively, under 28 U.S.C. § 1391(b)(3) because BNY Mellon is subject to the Court's personal jurisdiction with respect to this action.

17. This Court has personal jurisdiction over BNY Mellon because the transactions or occurrences giving rise to this action occurred in Kansas.

## FACTUAL ALLEGATIONS

### A. Ronald McLane's Foreclosure and Redemption of his Property

18. On January 9, 2012, BNY Mellon commenced a foreclosure action in the District Court of Johnson County, Kansas against Mr. McLane. Some years earlier, Mr. McLane had obtained a loan secured by a mortgage on his residence located at 5517 Broadmoor Street in Mission, Kansas.

4

19. BNY Mellon's outside counsel in the foreclosure case was South & Associates, P.C., a large foreclosure law firm based in Overland Park, Kansas.

20. According to BNY Mellon's foreclosure petition, Mr. McLane had been delinquent on his loan payments since November 1, 2011.

21. In its foreclosure petition, BNY Mellon requested that the court enter judgment against Mr. McLane and order that the redemption period be limited to a "period of 3 months" because less than one-third of the original mortgage debt had been repaid.

22. On March 2, 2012, the district court entered a judgment for foreclosure against the property and against Mr. McLane individually for $125,229.90, with $122,687.76 attributed to the unpaid principal balance and accrued interest, and the remainder to attorneys' fees and various other expenses.

23. The district court's order further directed the Johnson County Sheriff to sell the property at a public auction if did not satisfy the judgment balance within 14 days and, pursuant to BNY Mellon's request, ordered that the redemption period be "fixed at 3 months from the date of the Sheriff's Sale."

24. Mr. McLane did not satisfy the judgment. Accordingly, on February 7, 2013, the sheriff conducted a public sale of the property, at which BNY Mellon purchased it for $128,900.00.

25. The sheriff's sale triggered the commencement of the statutory period for which the property was subject to the right of redemption. Pursuant to the district court's order, Mr. McLane's redemption rights were to expire three months later, on May 7, 2013.

    **B. BNY Mellon Includes the Cost of Excessive and Unused Insurance as Part of 's Redemption Payoff**

26. K.S.A. § 60-2414(d) permits a holder of a certificate of purchase to "repayment of all sums" paid for "taxes on the lands sold, insurance premiums on the improvements thereon,

5

other sums necessary to prevent waste" during "the period allowed for redemption" by including such expenses in the redemption amount. The statute requires all such expenses be "shown by receipts or vouchers filed in the office of the clerk of the district court."

27. On April 15, 2013, counsel for BNY Mellon responded to a request from Mr. McLane for a redemption payoff amount, citing K.S.A. § 60-2414 as support for the components of the payoff total, which permits the recovery of expenses that are incurred "[d]uring the period allowed for redemption."

28. In this case, the redemption period was initially three months. In its redemption quote (which BNY Mellon filed with the court on May 3, 2013), counsel included "Insurance Paid Since Sale" in the amount of $1,769.74.

29. By referring to K.S.A. § 60-2414(d) as support for including the insurance amount in the payoff amount and otherwise presenting the insurance charges as reimbursable, BNY Mellon represented that such amounts were incurred for maintenance and preservation of the property during the redemption period.

30. But they were not. Contrary to BNY Mellon's representation, the $1,769.74 in expenses incurred to procure hazard insurance was in fact a premium for at least an entire year of coverage, not the redemption period.

31. Assuming BNY Mellon's $1,769.74 total accurately reflected the cost of insuring the property for one year, the figure overstated the costs of insuring the property during the redemption period—*i.e.*, the period running from the date of the foreclosure sale to the date that Mr. McLane redeemed the property—by approximately $1,362.46.

32. Further, BNY Mellon—in direct violation of K.S.A. § 60-2414(d)—failed to file "receipts or vouchers" to support its purported insurance expenditure.

6

33. Accordingly, and in reliance upon BNY Mellon's representations, Mr. McLane exercised his redemption rights in the foreclosed property on May 2, 2013, by tendering $133,212.19 (which included the insurance amount of $1,769.74) to the Clerk of the Johnson County District Court.

34. BNY Mellon likely cancelled, or certainly could have cancelled, the hazard insurance on or around May 2, 2013, immediately after Mr. McLane exercised his redemption rights and thereby extinguished BNY Mellon's insurable interest in the property.

35. BNY Mellon therefore likely did, or could have, received a refund of approximately $1,362.46 in unearned premium upon termination of the policy, even though the cost of such unused insurance was paid for by Mr. McLane.

36. Mr. McLane first learned that he had been fraudulently overcharged for hazard insurance on or around January of 2020.

37. Whether or not BNY Mellon received a refund of unearned hazard insurance premium, Mr. McLane has suffered damage by paying excess hazard insurance premium in reliance on BNY Mellon's representations that such costs were incurred in during the redemption period, when they were not, in fact, attributable to property preservation during the redemption period and thus were not reimbursable under K.S.A. § 60-2414(d).

**C.  A Different Foreclosure Proceeding Suggests that BNY Mellon Likely Received a Refund of the Unearned Insurance Premium and Illustrates the Proper Procedure for Returning Funds to the Redeeming Party**

38. In another Kansas foreclosure case in which the foreclosed property ultimately was redeemed, the mortgage lender, Bank of America, returned to the court funds it received for unused insurance. *See Bank of America, N.A. v. Johnson*, Case No. 13-CV1565, Sedgwick County District Court) ("*Johnson*").

39. Specifically, in a pleading titled "Motion to Deposit Funds in the Court Registry," Bank of America advised the court of the following:

    (a) On or about November 17, 2015, Bank of America provided a redemption quote to the redeemer in the amount of $113,572.72.

    (b) The redemption amount included an advance for "Hazard Insurance Premiums" in the amount of $2,348.00.

    (c) On or about November 20, 2015, the redemption took place when the redeemer deposited redemption funds in the amount of $113,615.68 into the court registry.

    (d) Subsequent to the redemption Bank of America terminated the insurance policy and recovered "the *pro rata* portion of the insurance premium in the amount of $1,404.95."

    (e) Bank of America "is returning said funds to the Court and requests said funds to be deposited into the Court registry to await further order."

40. Notably, the redeemer in *Johnson* was a corporate entity that acquired the homeowner's redemption rights and was represented by counsel.

41. The procedure that Bank of America followed in *Johnson* is an example of what should happen in these types of cases, and it demonstrates that banks do, in fact, receive reimbursements for unused insurance. Unfortunately, *Johnson* is an outlier—and BNY Mellon does not appear to follow it.

## CLASS ACTION ALLEGATIONS

42. <u>Description of the Classes</u>: Plaintiff brings this class action on behalf of himself and other similarly situated individuals. Pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3) and (c)(4), as applicable, Plaintiff seeks certification of the following classes of individuals:

(a) <u>The Nationwide Class</u>:

> All residents of the United States who redeemed a property purchased in foreclosure by BNY Mellon and, in connection with that redemption, reimbursed BNY Mellon for property insurance premiums that were not prorated to reflect the period of ownership held by BNY Mellon.

(a) <u>The Kansas Subclass</u>:

> All residents of the United States who redeemed a property situated in Kansas that was purchased in foreclosure by BNY Mellon and, in connection with that redemption, reimbursed BNY Mellon for property insurance premiums that were not prorated to reflect the period of ownership held by BNY Mellon.

> Excluded from the classes are BNY Mellon's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the classes are any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

43. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and members of the classes, and those questions substantially predominate:

(a) Whether BNY Mellon was unjustly enriched by the conduct and practices described herein;

(b) Whether BNY Mellon fraudulently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(c) Whether BNY Mellon negligently misrepresented insurance expenses purportedly incurred for the maintenance of property during the redemption period;

9

(d) Whether BNY Mellon fraudulently failed to disclose facts pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period;

(e) Whether BNY Mellon's misrepresentations and/or omissions pertaining to insurance expenses purportedly incurred for the maintenance of property during the redemption period were material;

(f) Whether equity and good conscience requires that BNY Mellon make restitution to Plaintiff and the class members;

(g) Whether Plaintiff and the class members are entitled to recover actual damages from BNY Mellon;

(h) Whether Plaintiff and the class members are entitled to injunctive relief; and

(i) Whether BNY Mellon acted intentionally, maliciously, and/or recklessly when it undertook the conduct described herein, such that Plaintiff and the class members are entitled to an award of punitive damages.

44. <u>Numerosity</u>: The proposed classes are so numerous that individual joinder of all members is impracticable.

45. All members of the proposed classes are ascertainable by objective criteria. BNY Mellon and/or its counsel or other agents have litigation and loan servicing records sufficient to identify the members of the classes, and contact information which can be used to provide notice to the class members.

46. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the proposed classes. Plaintiff and all members of the classes have been similarly affected by the actions of BNY Mellon.

47. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of members of the classes. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and counsel are committed to vigorously prosecuting this action on behalf of class members and have the financial resources to do so.

48. <u>Superiority of Class Action</u>: Plaintiff and the members of the classes suffered, and will continue to suffer, harm by BNY Mellon's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the classes is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by BNY Mellon's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

49. By its statements, words, and/or acts, BNY Mellon suppressed the truth regarding the hazard insurance premiums assessed to, and paid by, Plaintiff, the Nationwide Class members, and the Kansas Subclass members, including by:

    (a) affirmatively misrepresenting to Plaintiff, the Nationwide Class members, and the Kansas Subclass members that the hazard insurance expenses it incurred were for maintenance and preservation of the redeemed property during their statutory

11

redemption periods, when the charges in fact corresponded to a coverage term exceeding the specific redemption periods;

(b) failing to substantiate such claimed expenses by receipts or vouchers filed with the clerk of the district court, as required by K.S.A. § 2414(d); and/or

(c) affirmatively withholding from Plaintiff, the Nationwide Class members, and the Kansas Subclass members the fact that BNY Mellon likely did, or could have, received refunds for hazard insurance that was not used and/or needed following the redemption of the properties.

50. Because of BNY Mellon's misrepresentations, omissions, and general scheme to conceal the truth about the claimed hazard insurance premiums, Plaintiff, the Nationwide Class members, and the Kansas Subclass members did not become aware, and could not have become aware through the exercise of reasonable diligence, of the facts described herein.

51. Accordingly, the Court should toll the statutory limitations periods otherwise applicable to the claims of Plaintiff, the Nationwide Class, and the Kansas Subclass under the doctrines of fraudulent concealment, equitable estoppel, and/or the discovery rule.

## COUNT I
### Unjust Enrichment
**(On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)**

52. Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

53. Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

54. Plaintiff conferred a benefit on BNY Mellon when he tendered a redemption payment comprised in part of a full year's worth of prepaid hazard insurance premium on the redeemed property.

55. BNY Mellon cancelled, or should have cancelled, the hazard insurance it procured upon Plaintiff's exercise of his redemption rights, which extinguished any insurable interest BNY Mellon had in the property.

56. BNY Mellon thus received or was entitled to receive a refund of portion of prepaid hazard premium that remained unearned at the time of the policy's cancellation.

57. BNY Mellon nonetheless accepted, appreciated, retained such premium refund, or failed to exercise its rights to such a refund, with knowledge that it belonged to Plaintiff.

58. BNY Mellon's retention of the premium refund by is inequitable under the circumstances because, among other reasons, all costs of procuring such insurance were borne by Plaintiff, not BNY Mellon, and because BNY Mellon's interests in the property or any income or expense reimbursements associated with it terminated when Plaintiff tendered his redemption funds.

## COUNT II
**Fraudulent Misrepresentation**
**(On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)**

59. Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

60. Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

61. BNY Mellon made representations to Plaintiff regarding the amount of hazard insurance procured for maintenance and preservation of the property during the redemption period and regarding the amount Plaintiff must pay to exercise his statutory redemption rights.

62. These representations were false—BNY Mellon overstated the amount Plaintiff was required to pay in order to exercise his redemption rights by including a hazard insurance premium in Plaintiff's redemption payoff amount that exceeded the term of the redemption period.

63. BNY Mellon intended that Plaintiff rely on its representations to ascertain the total sum he must pay and expenses he must reimburse BNY Mellon in order to exercise his redemption rights.

64. Plaintiff relied on the truth and accuracy of the information conveyed by BNY Mellon to ascertain the total sum he must pay and expenses he must reimburse BNY Mellon in order to exercise his redemption rights.

65. Plaintiff sustained damages when he relied on the truth and accuracy of such information conveyed by BNY Mellon because, among other reasons, he reimbursed the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

66. BNY Mellon acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiff is entitled to an award of punitive damages sufficient to punish and deter like conduct.

### COUNT III
### Negligent Misrepresentation
### (On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)

67. Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

68. Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

69. BNY Mellon supplied false information to Plaintiff for his guidance and benefit in ascertaining the amount he must pay to redeem his property in foreclosure.

70. Specifically, BNY Mellon failed to exercise due care in ensuring that the hazard insurance premium included in Plaintiff's redemption payoff amount accurately corresponded to the duration of the redemption period.

71. Plaintiff relied on the truth and accuracy of the information conveyed by BNY Mellon regarding the nature and extent of reimbursable expenses included in Plaintiff's redemption payoff amount.

72. Plaintiff is within the class of persons whom BNY Mellon intended to guide when it supplied information regarding the nature and extent of reimbursable expenses included in Plaintiff's redemption payoff amount or, alternatively, is within the class of persons to whom BNY Mellon knew such information would be communicated by another.

73. Plaintiff sustained damages when he relied on the truth and accuracy of such information conveyed by BNY Mellon because, among other reasons, he reimbursed the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

## COUNT IV
**Fraud by Silence**
**(On Behalf of Plaintiff, the Nationwide Class, and the Kansas Subclass)**

74. Plaintiff incorporates all prior allegations of this Complaint as if set forth fully herein.

75. Plaintiff brings this cause of action on behalf of himself, the Nationwide Class, and the Kansas Subclass.

76. BNY Mellon had a duty to disclose material facts to Plaintiff regarding the nature and extent of reimbursable expenses added to Plaintiff's redemption total, including: that the claimed hazard insurance expenses were annualized and not prorated to the actual duration of the redemption period; and/or that BNY Mellon and/or its agents received a refund of unearned premium to which Plaintiff was entitled.

77. BNY Mellon's duty to disclose arises by law, including without limitation, under K.S.A. § 2414(d) 12 CFR § 1024.37(g), and litigant's and/or its counsel's duties of candor to the court.

78. BNY Mellon's duty to disclose also arises by virtue of its own culpability in creating Plaintiff's mistaken belief that the claimed hazard insurance expenses were attributable to the redemption period.

79. BNY Mellon knew or had reason to know that the undisclosed information about the hazard insurance expenses were material to Plaintiff's decision to tender a redemption payment inclusive of such expenses.

80. BNY Mellon intended that Plaintiff rely on its silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiff was not entitled to a refund of unearned premium upon termination of the coverage.

81. Plaintiff in fact relied on BNY Mellon's silence as grounds to believe that the stated hazard insurance expenses covered only the term of the redemption period and/or that Plaintiff was not entitled to a refund of unearned premium upon termination of the coverage.

82. Plaintiff has sustained damages directly and proximately caused by the foregoing conduct in an amount to be proven at trial, including by paying the costs of a full year's worth of prepaid hazard insurance premium instead of just that portion of the premium attributable to the redemption period.

83. BNY Mellon acted intentionally, maliciously, and/or recklessly when it undertook the foregoing conduct, such that Plaintiff is entitled to an award of punitive damages sufficient to punish and deter like conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed classes, respectfully requests that this Court:

(a) Certify the Nationwide Class and the Kansas Subclass pursuant to Federal Rule of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4);

(b) Appoint Plaintiff as Class Representative for the Nationwide Class and the Kansas Subclass and appoint his counsel as Class Counsel for the Nationwide Class and the Kansas Subclass pursuant to Federal Rule of Civil Procedure 23(g);

(c) Find BNY Mellon's conduct was unlawful as alleged herein;

(d) Enjoin BNY Mellon from engaging in further unlawful conduct as alleged herein;

(e) Award Plaintiff and the class members nominal, actual, compensatory, consequential, and punitive damages;

(f) Award Plaintiff and the class members pre-judgment and post-judgment interest;

(g) Award Plaintiff and the class members their reasonable attorneys' fees, costs, and expenses; and

(h) Grant such other relief as the Court deems just and proper.

*   *   *

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a trial by jury on all issues so triable and designate Kansas City, Kansas, as the place of trial.

Dated:  November 5, 2020.                    Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Bradley T. Wilders
Bradley T. Wilders  KS #78301
Michael R. Owens  KS #26747
460 Nichols Road, Ste. 200
Kansas City, Missouri 64112
Tel: 816-714-7100
wilders@stuevesiegel.com
owens@stuevesiegel.com

**SNYDER LAW FIRM LLC**

Paul D. Snyder   KS #14537
Karen E. Snyder KS #15424
Snyder Law Firm, LLC
10995 Lowell Ave, Ste 710
Overland Park, KS 66210
Tel: 913-685-3900
psnyder@snyderlawfirmllc.com
ksnyder@snyderlawfirmllc.com

*Attorneys for Plaintiffs and the Proposed Classes*